## CHESAPEAKE & O. RY. CO. v. PEYTON.

### (Circuit Court of Appeals, Fourth Circuit.    October 1, 1918.)

#### No. 1639.

1. MASTER AND SERVANT ⬦150(5)—DUTY TO WARN—CHANGE IN CONDITIONS.
    While, if motorcars ran on defendant's coal pier at intervals of two to four minutes, an employé injured in crossing could not recover on the ground that no notice by bell or whistle was given of the approach of the motor, he might have a cause of action if the track on which the motor ran was changed without notice.

2. MASTER AND SERVANT ⬦286(40)—INJURIES TO SERVANT—EVIDENCE.
    In action by employé on a coal pier, run down by a motor used on the pier to transport coal, the question whether the master was negligent in changing the motor from one track to another without notice, etc., held, under the evidence, for the jury.

3. MASTER AND SERVANT ⬦265(14)—PRESUMPTIONS—AVOIDANCE OF DANGER.
    There is a presumption that an employé on a coal pier, who knew a motor was running every few minutes, would, when about to cross the tracks, look and listen for the motor in the direction from which he had reason to expect it.

4. MASTER AND SERVANT ⬦293(18)—INJURIES TO SERVANT—INSTRUCTIONS.
    In an action by an employé on a coal pier, who was struck by a motor used to carry coal to various parts of the pier, instructions on the duty of the master, etc., held correct.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by Frank Peyton against the Chesapeake & Ohio Railway Company. There was judgment for plaintiff, and defendant brings error. Affirmed.

William Leigh Williams, of Norfolk, Va., for plaintiff in error.

Daniel Coleman, of Norfolk, Va. (Berry D. Willis, of Norfolk, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge.    In receiving coal at Newport News, Va., from the Virginia and West Virginia coal fields, and loading it on vessels, the defendant dumps the coal from an ordinary coal car into a motorcar and raises the loaded motorcar by an elevator to the coal pier. On the pier, which is about 1,200 feet long, are laid two tracks from the elevator to the coal chutes through which vessels are loaded. These tracks cross each other in the form of an X, and the motor runs on either the north or the south track as the work requires. A large number of men are constantly employed on the pier, who have to cross the tracks many times every day in their work. The pier is well lighted by electricity, and the motorcars carry electric headlights. The distance from the elevator to the point of intersection of the two tracks is about 150 feet. The motors run at a speed of about 15 miles an hour, and make the trip from elevator to pier every four minutes, sometimes every two minutes. There is no signal bell on the motor, and it is not customary to give warning of its approach.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] From this statement of the method of operation, which is not disputed, it is obvious that the running of the motor from the elevator to the chutes at intervals of only two to four minutes would be notice to every employé on the pier to be always on the lookout in crossing the track on which the motor runs, and therefore an employé injured in crossing that track could not recover, on the ground that no notice by bell or whistle was given of the approach of the motor. Acrkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758. It is equally evident, however, that an employé might have a cause of action, if injured while crossing the track in the course of his work by the motor coming up on the south track without signals, when he had been misled by the defendant, so that he expected and looked out for the motor on the north track. C. & O. Ry. Co. v. Proffitt, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102; Great Northern Ry. Co. v. Mustell, 222 Fed. 879, 138 C. C. A. 305; So. Ry. Co. v. Smith, 205 Fed. 360, 123 C. C. A. 488; Richmond & D. R. Co. v. Norment, 84 Va. 167, 4 S. E. 211, 10 Am. St. Rep. 827.

[2, 3] Plaintiff's evidence on this point was substantially as follows: On the night of the accident, there was a rush of work, and plaintiff was aiding in loading a government collier. Needing oil for his lamp, he started to a shanty across the track to get it. The motor had been running on the north track, and it was the custom of the defendant to give employés notice before changing the motor from one track to the other. No notice of change had been given. Plaintiff, before undertaking to cross at the intersection of the tracks, looked for the motor only on the north track. As he stepped on the track, the motor running on the south track struck him in the back. The evidence on behalf of the defendant was to the effect that the motor ran on either track as occasion required, and that there was no custom of giving notice to employés of the change. Thus a sharp issue was made whether the accident was due to the negligence of the defendant in not giving notice of changing the motor from one track to the other, and not signaling its approach, so as to protect employés crossing the track, or to negligence of the plaintiff in not looking out for the motor on both tracks. On this issue the case of the plaintiff was strengthened by the presumption that one about to cross the track would look and listen for the motor in the direction from which he had reason to expect it. Texas, etc., Ry. Co. v. Gentry, 163 U. S. 357, 16 Sup. Ct. 1104, 41 L. Ed. 186; Baltimore, etc., R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; Central Vermont Ry. Co. v. White, 238 U. S. 507, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Pocahontas C. C. Co. v. Johnson, 244 Fed. 368, 156 C. C. A. 654. It follows that there was no error in refusing to direct a verdict for the defendant.

[4] The instructions to the jury on the points really in issue were in strict conformity to the law as we have stated it, and were not inconsistent with each other. In brief, they were as follows: The defendant was under no duty to warn its employés on the pier by bell or whistle of dangers known to them, or to keep a lookout to protect them against such dangers; but the jury might find negligence from failure to give warning or keep a lookout to protect employés from per-

ils brought upon them by unusual and unexpected action of defendant. Applied to the issues of fact made by the evidence, this meant that, if the plaintiff went on the track with knowledge that the motor might come at any time on either track at intervals of two to four minutes, there was no duty on the defendant to warn or keep a lookout; but if he went on the track, having reason to expect and to look out for the motor on one track, and the defendant without notice ran the car on the other track, then the jury might infer negligence from failure to give signals of the unexpected approach, and from failure to keep a lookout for employés. This, as we have indicated, was a correct statement of the law applicable to the issues.

Affirmed.