PAUL G. TISMER, Appellant, *v.* THE NEW YORK EDISON COMPANY, Respondent.

Electric light corporation — action against corporation to recover penalties for its refusal to supply lights to customer — unreasonable and illegal exaction as condition of customer's having lights — Statute of Limitations — computation of time of running of statute.

1. An electric light corporation may condition its supply of current upon the safety of the customer's equipment and establish reasonable regulations for the purpose of assuring itself that the condition has been fulfilled, but the application by the customer and its acceptance by the corporation make out the contract, which defines their respective rights and duties.

2. Defendant, an electric light company, by a contract with plaintiff, undertook to supply electric current for light and power to plaintiff subject to the sole condition that the supply should not begin "until the equipment shall have been approved by the constituted authorities and by the company." Plaintiff furnished the certificate of the department of water supply, gas and electricity of the city of New York, which was the approval of the "constituted authorities" (Greater N. Y. Charter, §§ 519, 524). Defendant refused to reconnect its wires which it had disconnected, unless, and until, it was furnished, at plaintiff's expense, with a certificate of the New York Board of Fire Underwriters, which is not an agency of the government but merely a voluntary association and has no authority to impose commands which householders are required to obey. The plaintiff refused to pay for this certificate and brought this action to recover the penalties

provided for by statute (Trans. Corp. Law, § 62; Cons. Laws, ch. 63) for defendant's refusal to supply light. *Held,* that the plaintiff in resisting defendant's demand for the fire underwriters' certificate was resisting an illegal exaction and that he is entitled to recover the penalties prescribed by the statute.

3. Plaintiff's cause of action is not barred by the three-year Statute of Limitations (Code Civ. Pro. § 383, subd. 3). Assuming that the cause of action occurred as soon as the electric current was cut off it accrued on July 13, 1908, and the action was begun July 13, 1911. Under the statute (General Construction Law, § 20; Cons. Laws, ch. 22, as amd. by Laws of 1910, ch. 347) the day from which any specified period of time is reckoned shall be excluded in making the reckoning. The first day is excluded in the computation of years as well as in the computation of days, weeks or months and, that day being excluded, the action was commenced in time. (*Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54, obsolete.)

*Tismer* v. *New York Edison Co.,* 170 App. Div. 647, reversed.

(Argued November 25, 1919; decided February 24, 1920.)

APPEAL from a judgment entered December 14, 1915, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. M. Sperry, W. E. Fitzsimmons* and *I. Vernon Weisbrod* for appellant. The Statute of Limitations is not a bar to this action. (L. 1890, ch. 566, § 65; *Jones* v. *Rochester Gas & El. Co.,* 7 App. Div. 474; 158 N. Y. 678; *Meiers* v. *Met. Gas Light Co.,* 11 Daly, 119; *Shelley* v. *Westchester Lighting Co.,* 139 App. Div. 690; 204 N. Y. 641; 128 App. Div. 890; *Hoch* v. *Brooklyn Bor. Gas Co.,* 117 App. Div. 882, 883, 884; *Levine* v. *Brooklyn Union Gas Co.,* 146 App. Div. 464; *Reiser* v. *Edison Electric Illum. Co. of Brooklyn,* 76 Misc. Rep. 563; *Hollander* v. *Westchester Lighting Co.,* 79 Misc. Rep. 646.) The Edison Company's requirement of a certificate from the New York Board of Fire Underwriters was unreasonable and not

made in good faith. (*People ex rel. Percival* v. *P. S. Comm.*, 163 App. Div. 705; *318 1/2 Tons of Coal*, 14 Blatchf. 453; *Frank* v. *Paducah Water Supply Co.*, 11 S. W. Rep. 432; *City of Chicago* v. *Rumpff*, 45 Ill. 90; *Shiras* v. *Ewing*, 48 Kan. 170; *Citizens G. & O. Mining Co.* v. *Whipple*, 32 Ind. App. 203; *City of New York* v. *Streeter*, 180 N. Y. 507; *City of New York* v. *Matthews*, 180 N. Y. 41; *Wilkes* v. *Dinsman*, 7 How. [U. S.] 88; *Saranac Land & Timber Co.* v. *Roberts*, 208 N. Y. 288; *People ex rel. Stone* v. *Minck*, 21 N. Y. 539; *Culp* v. *City of New York*, 146 App. Div. 326; *Hartwell* v. *Root*, 19 Johns. 344.)

*Charles I. Taylor* and *Thomas H. Beardsley* for respondent. Defendant's requirement of a certificate from the New York Board of Fire Underwriters as to the safety of interior electrical installations is a reasonable and proper regulation and in the public interest. (*Schmeer* v. *Gas Light Co.*, 147 N. Y. 529; *Benson* v. *Am. Tel. Co.*, 102 N. Y. Supp. 206; *Montgomery* v. *Buffalo Ry. Co.*, 165 N. Y. 139; *Avery* v. *N. Y. C. & H. R. R. Co.*, 121 N. Y. 31.) Plaintiff's claim is barred by the Statute of Limitations. (Code Civ. Pro. §§ 380, 383, subd. 3; *Aultman & Taylor Co.* v. *Syme*, 163 N. Y. 54; *Benoit* v. *N. Y. C. & H. R. R. R. Co.*, 94 App. Div. 24; *Vose* v. *Kuhn*, 45 Misc. Rep. 455; *People* v. *Luther*, 1 Wend. 42; *Parker* v. *Pierce*, 120 N. Y. 221; *Ryer* v. *Prud. Mt. Co.*, 185 N. Y. 6; *Hoch* v. *B. B. Gas Co.*, 117 App. Div. 882; *Meiers* v. *Met. Gas Light Co.*, 11 Daly, 119; *Shelley* v. *Westchester Lighting Co.*, 119 App. Div. 61; *Shelley* v. *Westchester Lighting Co.*, 128 App. Div. 890; 204 N. Y. 641; *Levine* v. *Brooklyn Union Gas Co.*, 144 App. Div. 464.)

CARDOZO, J. This action was brought under section 65 of chapter 566 of the Laws of 1890 (now section 62 of the Transportation Corporations Law; Consol. Laws, chap. 63) to recover penalties for the defendant's refusal to supply the plaintiff with electric light.

On January 27, 1908, the plaintiff made application to the defendant in writing that it supply electric current to an equipment for " about ten " incandescent lamps and one one-horse power motor in the building No. 63 Grand street in the city of New York for the period of one year, and thereafter until termination by notice of thirty days. " The meter and service applicances necessary to connect the customer's equipment with its mains," were to be furnished by the company. " The wiring equipment and appurtenances " were to be " furnished by the customer, who shall maintain the same in condition required by the constituted authorities; but the company shall not be required to supply current hereunder until the equipment shall have been approved by the constituted authorities and by the company." This application, which had been made on one of the defendant's printed forms, was accepted by the defendant in writing on February 1, 1908. Both sides concede that at the time of the acts complained of by the plaintiff, these two papers, the application and the acceptance, made out the contract which defined the rights and duties of company and customer.

The wiring equipment and appurtenances furnished by the plaintiff were inspected by the department of water supply, gas and electricity of the city of New York and by the board of fire underwriters. The plaintiff forwarded to the defendant on March 6, 1908, a certificate of approval by the city department. He also forwarded on the same day a letter signed by the chief inspector of the board of fire underwriters to the effect that on payment of its inspection fee of $2.50 a certificate of approval would be issued. About this time the equipment was connected somehow and by some one with the defendant's wires; and for some months thereafter the defendant supplied current, for which it rendered bills and received payment at monthly intervals. There was no complaint until June 30, 1908, when the defendant wrote that the certificate of approval of the board of fire underwriters

had not yet been received. The plaintiff made no response, and on July 13, 1908, the defendant without warning disconnected the equipment and cut off the supply of current. It stated a month later, in response to an inquiry from the plaintiff, that some defects, which it made no attempt to explain, had been reported by the board, but it gave notice at the same time that even though these undisclosed defects were corrected, it would refuse to reconnect its wires until furnished with the desired certificate. On receipt of this notice the plaintiff made some trifling changes, substituting eleven incandescent lights for ten, but leaving the extent of his equipment in other respects the same. The change was approved by the city department, and its certificate forwarded to the defendant on September 30, 1908. At the same time the plaintiff made a second application in which he requested electric current for an equipment of eleven incandescent lamps. His letter concluded with these words: " I want to say that I am prepared and offer to comply with any proper requirements of your company, but I do and shall always continue to refuse to furnish you with a certificate of the New York Board of Fire Underwriters, if I have to pay $2.50, or any other sum, to get it." The defendant answered on October 1, 1908, that without the certificate no current would be supplied. Following this refusal, the plaintiff waited till July 13, 1911, when he brought this action to recover the penalties accumulated since July 13, 1908. He had a judgment at Trial Term upon a verdict directed in his favor. The judgment was reversed at the Appellate Division, and the complaint dismissed.

The statute says that an electric light corporation shall supply electric light for lighting purposes upon the written application of an owner or occupant of premises within one hundred feet of its wires, " and if for the space of ten days after such application, and the deposit of a reasonable sum * * * if required," the corporation shall refuse or neglect to supply electric light, it " shall forfeit

and pay to the applicant the sum of ten dollars, and the further sum of five dollars for every day thereafter during which such refusal or neglect shall continue " (Transporation Corporations Law, sec. 62; formerly L. 1890, ch. 566). The penalty has its origin in the statute, but the duty to serve would exist without the statute, for it results from the acceptance of the franchise of a public service corporation (*People ex rel. Cayuga Power Corp.* v. *Public Service Comm.*, 226 N. Y. 527, 532). In spite of this duty, we do not question the defendant's right to condition its supply of current upon the safety of the customer's equipment, and to establish reasonable regulations for the purpose of assuring itself that the condition has been fulfilled. In determining this case, however, our concern is not with the regulations which the defendant might have adopted. Our concern is with the regulations which the defendant did adopt. By its contract with the plaintiff, it undertook to supply electric current subject to the sole condition that the supply should not begin " until the equipment shall have been approved by the constituted authorities and by the company." The plaintiff furnished the certificate of the department of water supply, gas and electricity. That was the approval of " the constituted authorities " (Greater N. Y. Charter, secs. 519, 524). The board of fire underwriters is not an agency of government. It has no authority to impose commands which householders are required to obey. It is nothing but a voluntary association of private persons without official rank or powers (*Newcomb* v. *Boston Protective Dept.*, 151 Mass. 215). The words " constituted authorities " must mean the same thing in the provision for preliminary approval as they do in the provision, contained in the same sentence, by which the customer pledges his submission to subsequent requirements. Submission is due, not to those whom custom may point out as competent to advise,

11

but to those whom the law has designated as empowered to command. The constituted authorities having approved, all that was lacking was the approval of the company itself. The company might inspect, and if reasonably dissatisfied as a result of the inspection, might decline to approve. In making an inspection, it might select as its agent the board of fire underwriters or any other representative it pleased. It might gather evidence from any source. It might seek advice in any quarter. None the less, the ultimate decision was to be its own; and in gathering evidence or seeking counsel, it was enlightening its own judgment, and guiding its own choice. The question is whether the cost of that process is to be charged upon the customer. The defendant did not refuse to supply current on the ground that the equipment, when inspected by its agents, or by the delegates of its confidence, was, in truth, defective. No attempt to sustain its refusal on that ground is made in this court. The defendant's grievance is merely this: that the expert whom it selected, even though satisfied with the equipment, will make no written report of satisfaction in default of a fee, which the customer declines to pay. If the duty to pay was not put upon the customer by the contract, the grievance is unreal.

We find nothing in the contract whereby the defendant reserved the right to charge against an applicant the services of its own agents engaged in its own business, or the expenses incurred in the process of informing its own judgment. Whether it might have declined to enter into the contract unless the applicant would assume that obligation, is a question not before us. The decisive consideration here is that the applicant did not assume the obligation, and the defendant did enter into the contract. Having done that, it was no longer free to make its duty to perform dependent upon new conditions. Reservation of the right to approve or disapprove is not equivalent to reservation of the right to charge for the

expense of ascertaining whether there shall be approval or disapproval. A promise that work will be done to the satisfaction of another does not involve a promise to assume the cost of the inspection by which satisfaction will be determined. We hold, therefore, that the plaintiff in resisting the demand for this certificate, was resisting an illegal exaction. If that is so, it is no concern of ours whether his conduct is to be characterized as praiseworthy or petty (*Morningstar* v. *Lafayette Hotel Co.*, 211 N. Y. 465, 468). Nor has the defendant been taken unawares. There was no uncertainty in the customer's objections, no chance of misconceiving the reason for resistance. Each party to the controversy was standing on his legal rights, and was willing to abate no fragment of them. With each, it was a question of *summum jus.* We cannot judge them otherwise than by the rigid law to which they have appealed.

The Statute of Limitations supplies no defense. For the purpose of the argument we may assume, without intending to express the belief, that the cause of action accrued as soon as the current was cut off, and not ten days thereafter. In that view, it accrued on July 13, 1908, and the action was begun on July 13, 1911. The period of limitation applicable is three years (Code Civ. Pro. sec. 383, subd. 3). The defendant argues that in reckoning this period, the day on which the cause of action accrued must be included, and hence that the action was a day too late. In support of that argument, we are referred to our ruling in *Aultman & Taylor Co.* v. *Syme* (163 N. Y. 54), decided in 1900. The Statutory Construction Law then read (sec. 27): " The day from which any specified number of days, weeks or months of time is reckoned shall be excluded in making the reckoning." Because the statute mentioned only days, weeks or months, we held that it had no application to the reckoning of years. That decision has become obsolete through an amendment of the statute. " In computing any

specified period of time from a specified event, the day upon which the event happens is deemed the day from which the reckoning is made. The day from which any specified period of time is reckoned shall be excluded in making the reckoning" (General Construction Law [Cons. Laws, ch. 22], sec. 20, as amended by L. 1910, ch. 347). The first day is now excluded in the computation of years as well as in the computation of days, weeks or months. That day being excluded, the action is in time.

The judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in the Appellate Division and·in this court.

HISCOCK, Ch. J., HOGAN, POUND and ELKUS, JJ., concur; COLLIN and McLAUGHLIN, JJ., dissent.

Judgment .reversed, etc.